A97A0906, A97A0907. T & R CUSTOM, INC. v. LIBERTY MUTUAL INSURANCE COMPANY; and vice versa.

(488 SE2d 705)

JOHNSON, Judge.

Liberty Mutual Insurance Company filed suit against T & R Custom, Inc. to recover $62,921 in insurance premiums for workers' compensation insurance coverage provided by Liberty from March 1, 1988 through March 1, 1990. T & R answered the complaint contending that all of the premiums had been paid to Venture Insurance Brokers, Inc., which T & R claimed acted as Liberty's agent.[1] T & R also asserted a counterclaim alleging that Liberty had tortiously issued inaccurate bills for premiums which had been calculated "using a wrongful, illegal and fraudulent method" and that monies paid to Venture which were subsequently converted constituted a tort attributable to Liberty as Venture's principal. The trial court granted a motion for partial summary judgment filed by Liberty, concluding as a matter of law that Venture and/or its owner Bob Conway were agents of T & R rather than Liberty and dismissing T & R's counterclaim. The case was tried to a jury which returned a verdict in favor of Liberty in the amount of $43,921. In Case No. A97A0906, T & R appeals from the trial court's grant of partial summary judgment to Liberty. In Case No. A97A0907, Liberty appeals from the judgment entered on the jury's verdict.

*Case No. A97A0906*

1. T & R asserts that a genuine issue of material fact exists regarding whether Venture was Liberty's agent for the purpose of collecting insurance premiums from T & R. "Independent agents or brokers are generally considered the agent of the insured, not the insurer. [Cit.]" *Kirby v. Northwestern Nat. Cas. Co.*, 213 Ga. App. 673, 678 (2) (445 SE2d 791) (1994). It is clear from the facts of this case

---

[1] The parties stipulated that T & R retained Venture, a company solely owned by Bob Conway, to obtain coverage through the National Counsel on Compensation Insurance. T & R's application was randomly assigned to Liberty as part of Georgia's Assigned Risk Pool. Except for a dispute over $19,679 allegedly owed for two disputed endorsements, T & R agrees that there is no dispute about the amount of premiums earned by Liberty during the coverage period. T & R asserts, however, that the monies were paid to Venture. Venture filed bankruptcy in July 1993. Conway was indicted on 35 counts of theft by deception and pled guilty to three of those counts. He was ordered to pay $83,273 in restitution.

that Venture was T & R's agent for the purpose of procuring coverage. Relying on *Nat. Property Owners Ins. Co. v. Wells*, 166 Ga. App. 281, 282 (2) (304 SE2d 458) (1983), T & R argues that Venture also acted as Liberty's agent for the purpose of collecting premiums and therefore at least acted in a dual capacity, as an agent for both the insurer and the insured. The lion's share of the evidence upon which T & R relies in support of this argument on appeal was produced at trial, however, rather than in response to Liberty's motion for partial summary judgment. "We consider only the evidence before the court at the time of its ruling on the motion for summary judgment. Any evidence [T & R] may have produced at trial in the course of establishing [its] case . . . is not part of our review, as [it] was bound to produce it in response to the motion for partial summary judgment. Appellate courts will review only evidence presented to the trial court before its ruling on the motion." (Citations and punctuation omitted.) *Avery v. Chrysler Motors Corp.*, 214 Ga. App. 602, 605 (1) (448 SE2d 737) (1994).

In support of its motion for partial summary judgment, Liberty relied on the pleadings and admissions of record, as well as the affidavit of Debora Knott, District Audit Manager for Liberty, and the depositions of Jimmie Sue Robinson, T & R's corporate secretary and office manager, and Conway. Knott's affidavit establishes that neither Conway nor Venture was the agent of Liberty for any purposes whatsoever. In Robinson's deposition, she stated "[Conway] was our agent; he said he was representing us, taking care of us, and we believed that." With respect to the collection of premiums, Knott stated that Liberty does not use independent agents to collect premiums on its behalf and never asked Conway or Venture to do so. In his deposition, Conway testified that T & R asked him to collect all of its insurance premiums and forward them to the various companies as a convenience. He agreed that Liberty never authorized him or Venture to collect premiums on its behalf.

The only evidence submitted in response to Liberty's motion for partial summary judgment was the deposition of Conway in which he characterized himself as a dual agent. Where there is no evidence, however, that a principal authorized someone to act as its agent, agency cannot be proven by declarations of the alleged agent. *Oglesby v. Farmers Mut. Exchange*, 128 Ga. App. 387, 389 (6) (196 SE2d 674) (1973).

"The denials of the purported parties of an agency relationship may not be disregarded by the trial court and are sufficient to support a motion for summary judgment. [T & R's] pleadings having been pierced, the burden of establishing the fact of agency fell upon [it], and [it] failed to carry that burden. Therefore, summary judgment in favor of [Liberty] was appropriate. [Cit.]" *Bush v. Vanguard*

*Ins. Co.*, 172 Ga. App. 704, 706 (324 SE2d 554) (1984).

2. In a second enumeration of error, T & R asserts that the trial court erred in dismissing the counterclaim in its entirety because certain portions of the counterclaim were not dependent on the existence of an agency relationship. T & R argues that its counterclaim against Liberty was not entirely premised on Venture's tortious conduct, specifically pointing out that portion of the counterclaim in which it was alleged that Liberty had billed for premiums based on a wrongful, illegal, and fraudulent method of calculation. Once a movant for summary judgment points to an absence of evidence to support at least one essential element of the non-movant's case, the non-movant cannot rest on the pleadings, but is required to come forward and point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). In response to Liberty's motion for partial summary judgment, T & R did not come forward with any specific evidence in support of its claim that Liberty wrongfully, illegally, or fraudulently calculated its premiums. Liberty was entitled to summary judgment on this portion of the counterclaim. See *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391, 393 (2) (469 SE2d 469) (1996).

### Case No. A97A0907

3. In Case No. A97A0907, Liberty first contends there was no evidence to support the jury's decision to reduce the judgment in its favor from $62,921 to $43,921. On appellate review, in the absence of a material legal error, a jury's verdict and the judgment entered thereon will not be disturbed if there is any evidence to support them. *Horan v. Pirkle*, 197 Ga. App. 151, 153 (397 SE2d 734) (1990). Viewed in this light, the evidence showed that there was a dispute over the amount owed on certain additional endorsements totaling $19,679. Jimmie Sue Robinson, T & R's office manager, gave conflicting testimony regarding two monthly premium increases which reflected additional endorsements. The confusion appears to have arisen as a result of the effective dates of the new coverage. Robinson testified that there had been an overcharge of the premiums because the increases had been paid one month too early resulting in an overcharge of some $19,000. She also testified, however, that the correct number of premiums had been charged. Although Liberty's representative explained the relationship between effective dates and the due dates of the increased premiums, there was at least some evidence supporting the jury's verdict. Therefore, we will not disturb it. See also *Professional Consulting Svcs. &c. v. Ibrahim*, 206 Ga. App. 663, 665 (1) (426 SE2d 376) (1992).

4. Finally, Liberty asserts the jury erred in failing to award Lib-

erty prejudgment interest. In paragraph 20 of the pretrial order, the parties agreed to submit the issue of prejudgment interest to the jury. The trial judge charged the jury that they were authorized to award prejudgment interest in the amount of one and one-half percent per month from the date the premium came due. No exception was taken to this charge. The jury, on a specially drafted verdict form, found in favor of Liberty in the principal amount of $43,921 and indicated specifically that it did not find in favor of Liberty for prejudgment interest. Neither party objected to the form of the verdict after it was returned. By failing to object, Liberty acquiesced in the submission of the issue of prejudgment interest to the jury. See *Outdoor Systems v. Woodson*, 221 Ga. App. 901, 902 (2) (a) (473 SE2d 204) (1996). Where a party agrees to the manner in which his rights shall be submitted for determination, he will not be permitted to complain on appeal. *Le Twigge, Ltd. v. Wammock & Co.*, 187 Ga. App. 446, 448 (370 SE2d 631) (1988). Because the amount claimed by Liberty was in dispute, OCGA § 7-4-15 does not apply. And while OCGA § 13-6-13 authorizes a separate award of prejudgment interest, it does not require such an award. As in *Bishop Contracting Co. v. North Ga. Equip. Co.*, 203 Ga. App. 655, 656-657 (1) (417 SE2d 400) (1992), the trial judge correctly charged the jury on the issue of prejudgment interest and entered judgment based on the jury's findings. We see no error.

*Judgments affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED JULY 3, 1997.

*Byrd, Anthony & Davis, Garland T. Byrd, Lovick P. Anthony, Jr., Alston & Bird, Gerald L. Mize, Jr., Douglas A. S. Chalmers, Jr.,* for appellant.

*Arnall, Golden & Gregory, James P. Smith, Ronald C. Thomason,* for appellee.